HAMITER, Justice.
 

 Following his being adjudged in contempt of the Twenty-eighth District Court in and for LaSalle Parish, and sentenced to serve five days in the parish jail, A. B. Parker, a duly licensed attorney at law of this state, applied to us for relief under our supervisory jurisdiction.
 

 On the showing made in the application we issued a writ of certiorari; ordered Honorable Vincent M. Mouser, Judge of the named court, to show cause on a designated date why the relief prayed for should not be granted; and further ordered that in the meantime all proceedings against relator be stayed and suspended.
 

 In his return to the rule nisi the respondent judge declares that the adjudging of relator in contempt, and the sentencing therefor, resulted from the latter’s misconduct during the hearing in his court on July 20, 1945, of a case entitled F. M. Kees v. W. L. Boyett in which the plaintiff was represented by Mr. A. D. Flowers and the defendant by relator. He, in his return, further and particularly declares as follows :
 

 “The hearing proceeded for a time in an orderly and normal fashion as shown by the Minutes, relator having filed and urged several exceptions which were tried and over-ruled by the Court. The final exception filed was an 'exception of no cause or right of action,’ which was immediately called up for trial. The relator, without any interruption or other incident, presented his argument in support of the exception.
 

 
 *1098
 
 “Mr. A. D. Flowers, attorney for plaintiff, then arose and addressed the Court for the purpose of presenting his argument upon said exception. He had merely stated: ‘The gist of the case is this/ when relator who was seated, without addressing the Court, interrupted Mr. Flowers by stating loudly in substance: T want him to stick to the pleadings.’ Said interruption was, of course, out of order and was made without any reasonable or substantial provocation on the part of Mr. Flowers.
 

 “Your respondent admonished relator not to make such interruptions, advising him that he was out of order in so doing. Instead of heeding the admonition of the Court, relator began arguing vociferously that he was within his rights in doing what he had done. The Court requested him to cease such arguments, as there was nothing before the court; to refrain from interruptions; and to permit Mr. Flowers to proceed in an orderly fashion with his argument. Relator persisted in such arguments and refused to heed the repeated admonitions of the Court to cease talking and permit Mr. Flowers to proceed. Thereupon he was warned by the Court that his continued actions of that nature would constitute contempt of Court. The relator then stated: ‘Go ahead and hold me for contempt.’ Whereupon respondent informed the attorney that he was in contempt of Court and ordered him to stand for sentence.
 

 “Your respondent, deeming it proper that a statement be incorporated in the record, showing the basis upon which the attorney was found to be in contempt of Court, began dictating such a statement to the Clerk, after having specifically found the relator to be in contempt of Court and having required the relator to stand for sentence to be imposed. While the Court was dictating to the Clerk the reasons for the sentence, the attorney interrupted the Court repeatedly, despite warnings by the Court that such interruptions would constitute additional and repeated contempt. After several warnings the attorney among other things stated: ‘If you are going to stick me, go ahead and do it and cut out all that speech making.’
 

 “Respondent upon first holding relator in contempt had intended to impose a fine of ten or fifteen dollars. However, because of the repeated acts of contempt committed by the attorney, after he had already been adjudged guilty of contempt, and while the Court was dictating the statement concerning said contempt for the record, it was deemed proper to punish him for the second offense committed, and accordingly he was sentenced to serve five days in the parish jail. It should be mentioned that while Court was stating the reasons for sentencing him, relator in addition to making verbal interruptions as above set forth,, which included the insulting statement quoted in the preceding paragraph, signed a check in blank and tossed it to the Clerk as indicating his contemptous lack of concern respecting the fine which he anticipated the Court was about to impose.
 

 “After the sentence was imposed relator requested that the Minutes show that he only said: ‘If your Honor desires to punish me as for contempt for only making
 
 *1100
 
 a proper and timely objection, then do so.’ Said statement was accordingly ordered placed in the Minutes as being a request from relator. It by no means constituted a full or correct statement of the things that were said by relator. In fact, the incident developed, not out of the making of an objection to the Court, but out of the rude and unprovoked interruption by the relator of opposing counsel, who, having the floor, was beginning to present a proper argument in an entirely proper and reasonable manner.
 

 “After the occurrence of the above incident, Mr. Flowers concluded his argument and the exception of no cause or right of action was over-ruled. An answer was then filed and the case was tried, without further incident, resulting in judgment in favor of plaintiff as prayed for.”
 

 Denying that he was in contempt of court, relator in his original application filed here, asserts that the respondent judge became very much incensed during the hearing of the Kees v. Boyett case when he (relator) gave and entered notice of his intention to apply to the Court of Appeal of the Second Circuit for writs to obtain a review of the judge’s decision overruling a plea to the jurisdiction. Further, relator asserts:
 

 “ * * * immediately following which entry, after the said Judge had directed that the case be then tried by him despite such writs being taken, your petitioner, as attorney for defendant in said case, and solely out of his duty to his client’s rights, as was every move in said case by him made, filed and presented an exception of vagueness to the very skimpy and apparently deficient petition that had been filed by plaintiff, after which was overruled by the Court, counsel for plaintiff stated that he would like to tell the Court all about what the case was as a matter of fact based on, indicating that he intended to tell him grounds for his action outside of what he had in his petition, whereupon your respondent, naturally and as his duty to his client’s rights and interests, requested the Court that counsel be held within the record in such speech; whereupon, and for no other reason, the Judge, who, as aforesaid, had very apparently been mad at your petitioner since his notice a moment or so before of taking the referred to writs, wheeled in his chair and commenced hollering and yelling at your petitioner to keep in his seat and keep his mouth shut and that he, the Judge would hold your petitioner as being in contempt of court, that your petitioner never said a single thing during the Judge’s whole display on said occasion other than to attempt to explain to him that he had done nothing but attempt to make a timely and proper objection, which your petitioner felt the 'said Judge had doubtless misunderstood, but which explanation the Judge would not and did not listen to, but drowned out with his continuing to loudly denounce your petitioner from the bench, with the more he talked and yelled at your petitioner the more angry he became, culminating in entering a holding that your petitioner had committed a contempt of court and sentencing him to five days in jail therefor; your petitioner showing that during the whole
 
 *1102
 
 episode carried on by the Judge he, your petitioner, never said anything or did anything whatever other than try unsuccessfully to explain to the Court that he had not said anything other than offer to make a proper and timely objection, which objection the Court refused to let him make or to hear his desire to make; and that in truth and in fact your petitioner was sentenced not for anything done by him but for the Judge’s own anger and breach of the quiet and orderliness of the court room, your petitioner averring that he has never so much as in the least raised his voice even or said or done one single thing contemptuous toward the Court or anyone else, he in fact not having been in the least so much as excited at the storm that was so unjustly heaped upon him for absolutely nothing, to the contrary being simply amazed at the Judge of his court carrying on in such anger for no valid reason at all.”
 

 Attached to another pleading filed in this court by relator, termed an “Amendment and Supplement to Application for Writs,” are affidavits of eleven persons, who were allegedly in the court room at the time of the incident’s occurrence, in which it is said among other things that relator “did not argue with the court vociferously or otherwise.” Respecting these affidavits the respondent judge, in a supplemental return, comments:
 

 “ * * * One of the parties signing an affidavit for Relator was Mrs. Elodie K. Parker, wife of Relator. The other parties, with perhaps two or three exceptions, were the client of Relator and witnesses favorable to his client’s cause. All of the persons making the affidavit, with perhaps one exception, were seated behind Relator, 35 to 50 feet distant from him, in a position, where in all probability, it was very difficult for them to have heard any substantial part of what transpired. The Courtroom at Jena is very large, with the Judge’s bench, counsel table, and jury box being in a alcove with a relatively low ceiling, with a semi-circle of windows directly behind the Judge’s bench, which windows, of course, were open on July 20th. The large space filled with seats for spectators, in contrast, has a very high vaulted ceiling, the acoustices being very poor.”
 

 Also attached to relator’s supplemental application is an affidavit of Mr. A. D. Flowers, attorney for the plaintiff in the cause that was being heard, wherein he states in part:
 

 “After Mr. Parker had argued to the Court an exception of vagueness filed by him, I arose and addressed the Court in the following language: ‘The gist of this case is —,’ at which point Mr. Parker requested the Court that I be held in my argument within the pleadings. It was at this point that the argument between the Court and Mr. Parker begun.
 

 “The objection or request in my opinion was not intended as any insult or reflection on me and I took no offense. I prefer not to comment on the merits of the controversy between Mr. Parker and the Judge; but after said sentence had been passed on Mr. Parker I was very anxious
 
 *1104
 
 to see same terminated amicably and requested the Court to suspend the sentence. I would still be glad if some form of amicable adjustment should be made of the matter.’''
 

 The mentioned affidavits cannot be .considered in our determination of the .dispute before us. They form no part of the record, being in the nature of original evidence. Wenar v. Schwartz, 116 La. 151, 40 So. 599, and Saenger Amusement Co. v. Masur, 158 La. 745, 104 So. 701. The record as transmitted to us, along with relator's application and the judge’s return, must govern.
 

 The above quoted extracts from ■such application and return show conclusively that a wide difference of views exists between the parties as to the circumstances .and facts attending the incident. In a •situation of this kind, where there is a ■conflict respecting allegations of fact between relator’s application and the return of the judge, the recitals of the judge prevails, unless error in the return clearly appears. State v. Ebeier, 154 La. 347, 97 So. 473, and State v. Bailey, 159 La. 187, 105 So. 284. The instant record, including the Minutes of Court, reveals no such error.
 

 Accepting the version given by the respondent judge, as must be done under the cited authorities, we are unable to disturb the conviction of contempt from which relator asks relief. Contempt of court by an attorney is that which is “said, done or committed directly in the presence or hearing of the court, during the sitting of the same; and which shall abuse, vituperate or insult any judge of the court, or any other person in or belonging to the court, or resist the authority or interrupt the proceedings thereof.” Revised Statutes Section 125, Dart’s Louisiana General Statutes Section 453. The misconduct attributed to relator by the respondent judge, which is described in the above quoted extract from the return, was committed in the presence of the court during its sitting, was undoubtedly insulting to the judge, and served to interrupt the court’s proceedings.
 

 It is our opinion, however, that error was committed in sentencing relator to serve five days in the parish jail. On this point our law provides:
 

 “If any counsellor or attorney at law shall be guilty of any contempt towards any court of this state, he may be punished therefor by fine not exceeding one hundred dollars, or by imprisonment not exceeding twenty-four hours, or both, ,at the discretion of the court; .and if the offender be guilty more than once of the like offense towards the same court, he may be punished therefor by fine not exceeding two hundred dollars, nor less than one hundred dollars, or by imprisonment not exceeding ten days, or both, at the discretion of the court.” Revised Statutes Section 124, Dart’s Louisiana General Statutes Section 452.
 

 Under that statutory provision the attorney may be sentenced to imprisonment in excess of twenty-four hours only when he is guilty more, than once of the
 
 *1106
 
 same offense, towards the same court. Here, the several remarks or utterances of relator, all of which occurred prior to his being sentenced, were made on a single occasion and manifested but one feeling of contempt. They did not evidence separate and distinct acts of contempt; rather they represented a continuing contemptuous and abusive attitude towards the court during a particular hearing. But one offense was thereby committed, and for it a maximum imprisonment sentence of twenty-four hours is allowed. State v. Soule, 8 Rob. 500; State ex rel. Schoenhausen v. King, Judge, 47 La.Ann. 701, 17 So. 288; State v. Williams, 131 La. 392, 59 So. 822.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the sentence of relator be annulled and set aside, and the Judge of the Twenty-eighth District Court is authorized to impose a sentence as for a single contempt offense in accordance with the provisions of Revised Statutes Section 124, Dart’s Louisiana General Statutes, Section 452, and consistent with the views herein expressed. To that extent the writs issued herein are made peremptory; otherwise, they are recalled at relator’s costs and the application is dismissed.